

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ALTON CEASOR, JR.** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 00-0347** |
| | * | |
| **PARKER DRILLING COMPANY** | * | **SECTION "D"** |
| | * | |
| | * | **MAGISTRATE "4"** |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PRE-TRIAL ORDER

1.  This matter came for Pre-Trial Conference on October 11, 2000 at 11:15 a.m.

    before the Honorable A. J. McNamara.

2.  Present were:

    Scott A. Soule, T.A., Bar No. 20379
    3525 N. Causeway Blvd., Suite 101
    Metairie, Louisiana
    (504) 832-0009

    J. Douglas Sunseri, Bar No. 19173
    Nicaud, Sunseri & Fradella, L.L.C.
    3525 N. Causeway Blvd., Suite 101
    Metairie, Louisiana
    (504) 837-1304
    Attorneys for Plaintiff, Alton Ceasor

DATE OF ENTRY
OCT 1 2 2000

1

Daniel J. Caruso, Bar No. 3941
Gregory P. Nolan, Bar No. 25808
Simon, Peragine, Smith & Redfearn, L.L.P.
30th Floor – Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-3000
(504) 569-2030
Attorneys for Defendant, Parker Drilling

3.    <u>Description of the parties</u>:

Plaintiff is a resident of Mississippi and person of legal of age.  At the time of the

accident, plaintiff was employed by defendant Parker Drilling.

4.    <u>Jurisdiction</u>:

This court has jurisdiction pursuant to 46 USC Section 688, more commonly

known as the Jones Act.  Jurisdiction is not contested.

5.    <u>Pending Motions</u>:

None.

6.    <u>Summary of Material Facts</u>:

(a)    Plaintiff:

Mr. Ceasor was employed as a floorhand aboard a drill barge owned by Parker Drilling

Company.  It is undisputed that he is a Jones Act Seaman.  On the final day of his seven day

hitch, during the waning hours of December 6, 1999, Mr. Ceasor and the crew of the Parker Rig

26 were engaged in the swirling chaos known in the industry as "tripping out", when the men on

the drill floor are frantically breaking out the drill pipe and swing the pipe to where it will be set

down on the rig floor.  Mr. Ceasor was ordered to again rush off of the drill floor while they were

removing the gravel pack assembly at the end of the drill string from the hole in order to remove

a gravel pack assembly.  Mr. Ceasor was ordered down to the pipe rack in order to quickly

unhook the gravel pack assembly. Because of the placement of the stands of pipe on the rig floor, Mr. Ceasor's ability to cross the rig floor to use the stairs that lead down to the pipe rack was limited to one route. Mr. Ceasor tripped and/or slipped on a length of splintered and rounded two by four nailed into the rig floor between the hand rail near the V-door opening and the stands of dripping drilling pipe.

Defendant's toolpusher testified that the racked pipe extended well into the V-door opening. The placement of the two by four posed a dangerous condition as it obstructed the only passage way to the stairwell Mr. Ceasor was ordered to use, was not painted with a non-skip surface or hazardous coloration to differentiate it from the rest of the drill floor, and was slick from the dripping stands of pipe being racked during the tripping out operation.

Due to the placement and position of the two by four, the failure of the crew to keep the area clean and clear, and the slippery condition of the deck, Mr. Ceasor's foot slipped in that narrow area, causing him to fall with one leg extending down the V-door, injuring his back.

The facts are largely undisputed and the failure to provide a safe place to work, failure to supervise the deleterious condition of the drill floor, the improper order of the driller, should result in a finding of negligence under the Jones Act, as well as unseaworthiness as the drill floor was not fit for its intended purpose as well as the failure to provide an adequate crew. The photographs reveal that the placement of the splintered and rounded two by four, together with the limited access way, left Mr. Ceasor no choice but to step where he stepped.

The medical sequelae that resulted from this accident is similarly undisputed. Defendants' independent neurologist, Dr. John Steck, reviewed the MRI obtained films shortly after the accident and agreed that there is in fact a ruptured disc at L5-S1 level. Dr. Flood and Dr. Watermeier have opined that a single level fusion is the only option for Mr. Ceasor to obtain

3

relief from his pain, and his only hope to improve his level of activity.  Defendant's doctor, Dr. John Steck, has similarly agreed that the fusion is warranted.  The fusion will take place later this Fall when Mr. Ceasor completes his weight loss program as ordered by Dr. Watermeier.

Mr. Ceasor was evaluated by Bobby Roberts, a vocational rehabilitation expert, who has opined that, given Mr. Ceasor's limited education, history of heavy labor employment, and residence in the depressed Natchez area, plaintiff may well be permanently and totally disabled, and that minimum wage employment is the best Mr. Ceasor can hope to obtain.  The limitations and restrictions placed on Mr. Ceasor, assuming he has a successful surgery and normal recovery, are the usual restrictions in a back fusion case, i.e., light employment with the possibility of medium employment.

As of the date of trial, net loss of past wages will be $31,511.00.  In light of the depressed economy in Natchez, the limitations, restrictions and limited education which Mr. Ceasor posses, there could well be a finding that he is permanently and totally disabled from future work.  In that event, his future wage loss claim is in the range of $416,326.00 (According to Dr. Boudreaux, defendant's economist, using an erroneous wage base, total and permanent future wage loss is $265,000.00.)  However, should Mr. Ceasor return to minimum wage employment, the net future discounted wage loss is $297,199.00.  (Dr. Boudreaux's figures are in the range of $150,000.00.)

The present value of the fringe benefits which Mr. Ceasor enjoyed has been established to be $48,391.00.  The value of found, again assuming usual recovery and maximum medical cure achieved May 1, 2001, is $42,414.00.  Maintenance at $20.00 per day would be necessary until Mr. Ceasor obtains maximum medical improvement following his surgery.

The cost of the BAK fusion is estimated to be in the range of $40,000.00.

4

Although Mr. Ceasor has not undergone his fusion, it is not premature to assess this component of an award in his favor. There will be no disputing Mr. Ceasor's credible testimony with regard to daily pain restrictions, limitations, and sexual dysfunction he has (and will) suffer. Analogous cases is this jurisdiction have awarded $175,000.00-$250,000.00 for pain, suffering and disability.

      (b)     Defendant:

On or about December 6, 1999, Alton Ceasor was working as a floorhand on the Parker Rig 26. At that time, all floorhands were tripping out of the hole with the ultimate goal of retrieving a gravel pack assembly. Apparently, the hole was sanding over and it was necessary to retrieve this down hole device. Immediately prior to the accident, the crew was breaking a piece of pipe immediately adjacent to the gravel pack assembly which had to be laid down in the lower pipe rack. Ceasor was delegated the job of going from the drill floor down to the lower pack rack to release that part of the gravel pack assembly from the air hoist. As Ceasor attempted to leave the drill floor, his right foot slipped off of a two by four pipe chock.

While Mr. Ceasor complains that the drill floor was wet, witnesses to the accident have stated and testified that there was no amount of abnormal moisture or foreign substances on the deck. The exact reason Mr. Ceasor slipped is unknown at this time.

Parker denies any negligence on its part or that the rig was unseaworthy.

7.    <u>Uncontested Material Facts:</u>

      A.     Plaintiff was employed by Parker Drilling on the day of the accident in the capacity of seaman;

      B.     Parker Drilling owned and operated the vessel Rig 26.

C.   Parker Drilling has paid and continues to pay plaintiff maintenance in the amount of $20.00 per day.

8.   <u>Contested issues of fact:</u>

A.   The facts and circumstances of the accident at issue;

B.   Whether PARKER DRILLING, or its agents, servants, employees, were negligent in the following particulars, among others that will be shown at the time of trial, to-wit:

1.   Failing to treat plaintiff appropriately following his back injuries;

2.   Failing to render prompt and adequate medical attention to plaintiff following his accident and injuries;

3.   In failing to properly supervise plaintiff;

4.   In failing to provide plaintiff with a safe place in which to work;

5.   In failing to provide plaintiff with a competent, skilled and adequate crew; and

6.   In acting without regard to the safety of plaintiff.

C.   Whether the PARKER Rig 26 was unseaworthy in the following particulars, among others:

1.   In that it was manned with an inadequate, unskilled, incompetent and insufficient crew;

2.   In that plaintiff was provided an unsafe place in which to work;

3.   The appurtenances of the vessel were not reasonably fit for its intended use.

6

D.      The negligence of Alton Ceasor in failing to keep a proper lookout for his own safety.

E.      The nature and extent of his injury;

F.      The nature and extent of his damages;

G.      The nature and extent of his disability;

H.      The need for additional medical treatment.

9.      Contested issues of law:

Plaintiff: Those inherent in the contested issues of fact listed above.  The rig was unseaworthy as set out above inasmuch as the crew was inadequate, unskilled, incompetent and insufficient; the plaintiff was provided an unsafe place in which to work; and the appurtenances of the vessel (specifically including the damaged two by four) were not reasonably fit for its intended use. Parker Drilling was negligent in the following, nonexclusive, particulars: In failing to properly supervise plaintiff; in failing to provide plaintiff with a safe place in which to work; in failing to provide plaintiff with a competent, skilled and adequate crew; and in acting without regard to the safety of plaintiff.

Defendant: Plaintiff was contributorily negligent.  Alton Ceasor was an experienced hand aboard the rig.  He had descended the lower pipe rack on one occasion prior to this accident without incident.  In addition, there were alternate methods of leaving the drill floor to reach the ladder which descended to the lower pipe rack.

While the method chosen by Mr. Ceasor was not unsafe, it did require that he exercise reasonable care for his own safety, which he failed to do.  For that

7

reason, while Parker denies any negligence on its part, it is clear that the plaintiff was, in fact, negligent in bringing about his own accident.

10.    Exhibits:

JOINT EXHIBITS:

1.

PLAINTIFF'S EXHIBITS:

1.    Accident Report dated 12/06/99.

2.    Parker Drilling Employee Safety Handbook.

3.    Medical records of Dr. John C. Steck.

4.    Medical records of Progressive Therapy Center.

5.    Dr. Van Uden medical records.

6.    West Jefferson Medical Center Records.

7.    USCG Certificate of Documentation.

8.    Employee File

    a.    Accident report 4/30/99

    b.    Personnel Action Notice dated 6/18/99

    c.    Employment and Wage History

    d.    Personnel Action Notice dated 10/6/99

    e.    Welcome to Parker Drilling/ Initial Training and Safety Orientation dated 9/28/99

    f.    STOP Unit 1-Introduction

    g.    Wage Verification Notice

    h.    Report of Injury dated 6/26/98

      i.       Post Offering Evaluation dated 10/20/97

      j.       Occupational Medicine Services Evaluation dated 9/28/99

      k.      Cost of fringe benefits

9.      IADC Daily Drilling Reports from December 1, 1999 through December 12, 1999.

10.      Morning Reports from December 1, 1999 through December 12, 1999.

11.      Louisiana Clinic Medical Records.

12.      Dr. Rice Expert Report.

13.      Bobby Roberts Expert Report.

14.      Photographs of the rig floor obtained by defendants.

15.      Concord Open MRI (Dr. Stover Smith)

16.      Any document received in response to discovery, or attached to depositions.

17.      Discovery propounded to defendants and responses thereto.

18.      Deposition of any witness who was unavailable or unable to attend trial (at present this includes Dr. Flood).

19.      Any exhibit listed by any other party.

## PARKER DRILLING'S EXHIBITS:

Parker may introduce the following exhibits at trial:

      a.      Accident report from December 6, 1999 accident.

      b.      Accident report from April 30, 1999 accident.

      c.      Daily drilling reports from December 1, 1999 through December 12, 1999.

      d.      Morning reports from December 1, 1999 through December 12, 1999.

e.      Plaintiff's income tax returns.

f.      Plaintiff's social security records.

g.      Letter by Danny McMellon asking that Mr. Ceasor not be returned to the Rig 11J due to his poor attitude.

h.      Letter by Robert Schumacher regarding Mr. Ceasor's layoff.

i.      Warning notice dated September 22, 1998 by Robert Schumacher regarding Ceasor's poor attitude.

j.      Photographs of the rig.

k.      Plaintiff's responses to defendant's discovery.

l.      Expert report of Dr. Kenneth Boudreaux.

m.      Any exhibit listed by any other party.

11.  a.  <u>Deposition testimony:</u>

Several witnesses live outside the subpoena power of the court; their depositions may be used in lieu of their live testimony if they are not available at trial.  Plaintiff will submit the deposition of Dr. Stephen Flood.

Defendant does not anticipate the use of deposition testimony at this trial. However, defendant reserves the right to use deposition testimony of witnesses who may become unavailable.

12.  <u>Description of any charts, graphs, models, etc.</u>

a.      Plaintiff may use a large pad of paper, photographs enlargements, a model or schematic diagram of the spine, all of which can be used in opening statements, presentation of evidence or closing arguments.

b.    Defendant may use:  None.

c.    The parties hereto have no objection to the use of the above listed objectives for such purpose.

13.    A.    <u>Witnesses:</u>

PLAINTIFF'S LIST OF WITNESSES:

<u>Plaintiff will call:</u>

1.    Mr. Alton Ceasor, Jr., 823 Laurawood Road, Natchez, MS  39120.  Mr. Ceasor will testify as to the duties and activities of the crew of the drill barge, the facts of the accident, the extent of his injuries and damages.

2.    Ms. Wanda Ceasor, 823 Laurawood Road, Natchez, MS  39120.  Mrs. Ceasor will testify as to the extent of Alton Ceasor's injuries and damages.

3.    Dr. John Watermier, The Louisiana Clinic, 3715 Prytania Street, New Orleans, LA  70115.  Dr. Watermier will provide expert medical testimony regarding the extent of the plaintiff's injury.

4.    G. Randy Rice, 7048 Moniteau Court, Baton Rouge, Louisiana 70809.  Dr. Rice will testify concerning the economic losses sustained by Mr. Ceasor.

5.    Bobby S. Roberts will testify concerning his vocational assessment of Mr. Ceasor in his efforts with regard to assessment, retraining,  employment availability.

<u>Plaintiff may call:</u>

6.    Dr. Stephen Flood may provide expert medical testimony regarding the extent of the plaintiff's injury.

7.    David Serrette, c/o Parker Drilling, New Iberia, Louisiana.  Mr. Serrette was acting rig manager of the RIG 26 and may testify concerning the operations conducted aboard the RIG 26 during the period surrounding the accident, and the facts and circumstances generally pertaining to Mr. Ceasor's accident.

8.    Joe Spry, c/o Parker Drilling, New Iberia, Louisiana.  Mr. Spry was the driller on the RIG 26 and may testify concerning the operations conducted aboard the RIG 26 during the period surrounding the accident, and the facts and circumstances generally pertaining to Mr. Ceasor's accident.

9.    Dr. Stover Smith, 2414 Bunker Hill Dr., Baton Rouge, LA.  Dr. Smith may testify as to the MRI results.

10.    Dr. Van Uden.  Dr. Uden may provide expert medical testimony regarding the extent of the plaintiff's injury.

11.    Andrew Krevolin, PT.  111 Jefferson Davis Blvd., Natchez, MS.  Mr. Krevolin may provide testimony regarding the physical therapy rendered to plaintiff.

18.    Dr. Andrew Kucharchuk.  Dr. Kucharchuk may provide expert medical testimony regarding the extent of the plaintiff's injury.

19.    Randall A. Reuther may testify concerning the operations conducted aboard the RIG 26 during the period around the accident, and the facts and circumstances generally pertaining to Mr. Ceasor's accident.

20.    Lisa Andrus may testify concerning the handling of the plaintiffs claim, and the facts and circumstances generally pertaining to Mr. Ceasor's accident.

21.    Dr. Arnold E. Feldman.    Dr. Feldman may provide expert medical testimony regarding the extent of the plaintiff's injury.

22.    Medical records custodian West Jefferson Medical Center.

23.    Dr. Ibrahim Seki.    Dr. Ibrahim may provide expert medical testimony regarding the extent of the plaintiff's injury.

24.    Any witness listed by any other party.

PARKER DRILLING WITNESSES:

Defendant will call the following witnesses:

a.    Joe Spry - Parker Drilling Company

Mr. Spry was the driller aboard Rig 26 at the time of plaintiff's accident and will testify regarding his knowledge of plaintiff's accident, and the conditions aboard the Rig at the time.

Defendant may call the following witnesses:

a.    Danny McMellon - Parker Drilling Company

Mr. McMellon will testify regarding his work history with the plaintiff aboard Rig llJ.

b.    Robert Schumacher - Parker Drilling Company

Mr. Schumacher will testify regarding his work history with the plaintiff.

c.    Howard Courville - Weatherford Completion
3308 West Pinhook Road
Lafayette, Louisiana

Mr. Courville was a witness to the accident and will testify regarding his knowledge of the facts surrounding the accident.

13

    d.      Dr. Kenneth Boudreaux - Economist
              1424 Bordeaux Street
              New Orleans, Louisiana 70115

              Dr. Boudreaux will testify regarding his analysis of plaintiff's economic loss.

    e.      Dr. John Steck
              Culicchia Neurological Clinic
              1111 Medical Center Blvd., Suite S750
              Marrero, Louisiana 70072

              Dr. Steck will testify regarding his examination of the plaintiff.

    f.      David Serrette - Parker Drilling Company

              Mr. Serrette was the toolpusher on Rig 26 and will testify regarding his preparation of the accident report and other matters regarding plaintiff's accident.

    g.      Plaintiff - Under Cross Examination

14.    This will be a non-jury trial.

15.    The issue of liability will not be tried separately from that a quantum.

16.    No other matters were known which might expedite the disposition of this case.

17.    Trial in this matter will take approximately two (2) days. Trial is hereby set for the 23rd day of October at 9:00 a.m.

18.    This Pre-Trial Order has been formulated after conference at which counsel for the respective parties have appeared in person. Reasonable opportunity has been afforded counsel for corrections, or additions prior to signing. Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court or by order of the Court to prevent manifest and justice.

19.    Possibility of settlement in this case was considered.

_____
HONORABLE A. J. MC NAMARA

_____
SCOTT A. SOULE

_____
J. DOUGLAS SUNSERI

_____
DANIEL J. CARUSO
GREGORY P. NOLAN

15